Filed 6/24/13  P. v. Jimenez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RUBEN WILFIDE JIMENEZ,<br><br>    Defendant and Appellant. | D062580<br><br><br>(Super. Ct. No. CR61972) |

APPEAL from an order of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

Patrick Morgan Ford for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Sabrina Y. Lane-Erwin and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

In 1983, Ruben Wilfide Jimenez entered a negotiated guilty plea to possessing heroin (Health & Saf. Code, § 11350) and was placed on probation for a period of three

years.  In 2012, Jimenez filed a motion to withdraw his guilty plea.  The court denied the motion.  Jimenez appeals, contending that the court erred in concluding that it lacked jurisdiction to rule on the motion.  We affirm.

BACKGROUND

At the February 1983 change of plea hearing, at which Jimenez and five codefendants entered guilty pleas, Jimenez was represented by attorney Ronald J. Brahms.  Jimenez initialed and signed a change of plea form stating that he had read and understood each of the enumerated items on the form, that Brahms had explained each item and that he had discussed each item with Brahms.  One of the items on the change of plea form described the possible immigration consequences of a guilty plea.  That item states:  "If [the defendant] is not a citizen, [a guilty plea] may result in deportation, exclusion from admission [illegible] United States, or denial of naturalization as an American citizen."

Two of Jimenez's seven codefendants were assisted by a Spanish language interpreter during the hearing.  Jimenez testified that he could read, write and understand English.  The judge who presided at the hearing recited the immigration consequences of the plea and obtained Jimenez's personal waiver of his constitutional rights.  Jimenez testified that he had discussed the case with Brahms, that he was satisfied with Brahms's representation and that he had had "plenty time" to talk with Brahms about the case.  The following exchange ensued between the judge and Jimenez.

"Q  I have before me a change of plea form which, after question 15, is signed Ruben [Jimenez].  Is that your signature?

2

"A  Yeah, that's my signature.

"Q  When you signed this form, was it filled out like it is now?

"A  Yes, I did.

"Q  Before signing this form, did you read it and go over it and did you understand it?

"A  Yes, sir.

"Q  Is everything on this form true and correct?

"A  It's true.

"Q  Do you have any questions about anything on this form, what's happening here now, or anything about this case?

"A  No questions."

Attorney Brahms told the judge that he had had sufficient time to discuss the case with Jimenez, and said that he had fully discussed with Jimenez the possible consequences of a guilty plea.  After finding that Jimenez understood the consequences, the judge accepted the plea.

In March 1983, the judge placed Jimenez on probation for a period of three years. In March 1986, another judge revoked, reinstated and extended Jimenez's probation to March 1988.

In 2010, Jimenez applied for legal residency in the United States.  His application was denied and removal proceedings were instituted.  In 2011, Jimenez retained an immigration attorney.  The immigration attorney filed an appeal with the Board of Immigration Appeals, challenging an order for Jimenez's removal from the United States.

3

In May 2012, Jimenez filed a motion to withdraw his guilty plea on the ground that he had not been advised of the immigration consequences of the plea (Pen. Code, § 1016.5). In a declaration accompanying the motion, Jimenez stated: "I found out that this nearly 30[-]year[-]old conviction is going to deport me. In 2011, I found this out after I applied for Legal Permanent Residence status under my US citizen daughter. I had no idea about this. The next thing I knew, I was placed in deportation proceedings. [¶] [N]o one explained this to me then, at the time of this conviction or when I had my probation violation in 1986." Jimenez did not state in his declaration that he had been unable to understand English at the time he entered his plea, nor did he state that he had applied for legal residency prior to 2011.

At the August 2012 hearing on the motion to withdraw his guilty plea, Jimenez testified that at the time he entered the plea, he could not read English, he could not speak English, except for "yes, no, little things," and "[i]f they talk real fast, I can't get it." He also testified that he had applied for permanent residence status in 2001 or 2002 and had been told to wait 10 years "[b]ecause it was not a probation" or "because the case I had" or because of the guilty plea. He had been told to "wait until [10] years and be good and be, you know, a good citizen." He did not know why the waiting period was 10 years. Jimenez testified that after he submitted his second residency application in 2010, he learned that his criminal conviction would result in deportation.

Attorney Brahms testified that he did not remember representing Jimenez. Brahms said that his custom and habit in 1983 was to explain a change of plea form to a

4

client; read the form to the client, or have the client read it; have the client initial and sign the form; and to use an interpreter when there was a language barrier.

In its ruling on the plea withdrawal motion, the court noted that Jimenez was present at the change of plea hearing when the judge said to two of Jimenez's codefendants, "[Y]ou may understand some English. I'm sure you do. But we either have to conduct the proceedings in English [or] Spanish and we can't do both. Since you apparently are more fluent in Spanish, we will ask you to use the Spanish language." The court noted that there had been an interpreter for two of the defendants during the hearing and observed that "[t]here is no evidence [Jimenez] did not hear the exchange between the interpreter and the other defendants who were afforded the use of an interpreter." The court also discussed Jimenez's lack of diligence in bringing the motion, and whether the court had jurisdiction to hear the motion, which the court characterized as "the bottom line" issue. The court stated that it believed it did not have jurisdiction to entertain the motion to withdraw the guilty plea because Jimenez was no longer on probation. The court concluded by saying, "the motion is denied for the reasons given by the court."

DISCUSSION

Jimenez is correct in arguing that the court erroneously ruled that it did not have jurisdiction to hear the motion because Jimenez was no longer on probation. (*In re Griffin* (1967) 67 Cal.2d 343, 347 ["Neither the probation statutes nor the cases applying them support a holding that expiration of the probationary period terminates the court's jurisdiction of the subject matter. The statutes themselves contemplate that such fundamental jurisdiction continues, for they provide for the court's determination of

5

certain matters after the end of the probationary term."].)  However, "[b]ecause we must affirm if the court's ruling was correct on any basis, we consider alternative bases for the order."[1]  (*People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1148, fn. 4.)

"To prevail on a motion to vacate under [Penal Code] section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement."  (*People v. Totari* (2002) 28 Cal.4th 876, 884.)  Assuming, arguendo, that Jimenez was diligent in bringing the motion, the change of plea form and the reporter's transcript of the change of plea hearing establish that Jimenez was advised that he might be deported as a consequence of his guilty plea.  Jimenez represented to the judge that he understood English.  Jimenez's responses were generally appropriate, demonstrating that he understood the judge's questions.  Jimenez checked the applicable boxes on the change of plea form and said that he had discussed the matter thoroughly with attorney Brahms.

The record thus establishes that Jimenez was properly advised of the immigration consequences of his guilty plea.  He therefore cannot prevail on a motion to withdraw his guilty plea.

---

[1]    Respondent argues that the court denied the motion on the basis that it was untimely.  Although the court did discuss diligence and timeliness, the record does not support the conclusion that the court denied the motion on that basis.

DISPOSITION

The order is affirmed.

AARON, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.